UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHANCE MOYER<br>151 Steward Avenue<br>Mansfield, OH 44906<br><br>*On Behalf of Himself and All Others Similarly Situated,*<br><br>    Plaintiff,<br><br>v.<br><br>NANOGATE NORTH AMERICA, LLC<br>c/o Steve Jenkins<br>150 East Longview Avenue<br>Mansfield, Ohio 44903<br><br>    Defendant. | Case No.<br><br>Judge<br><br>**COMPLAINT**<br><br>(Jury Demand Endorsed Herein) |

Now comes Plaintiff Chance Moyer, by and through undersigned counsel, and for his Complaint against Defendant Nanogate North America, LLC, states and alleges the following:

**INTRODUCTION**

1. This is a "collective action" instituted by Plaintiff as a result of Defendant's practices and policies of not paying its hourly, non-exempt employees, including Plaintiff and other similarly situated employees, wages for all hours worked, including overtime compensation at the rate of one and one-half times their regular rate of pay for all the hours they worked over 40 each workweek, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

2. Plaintiff also brings this action as a "class action" pursuant to Fed. R. Civ. P. 23 to remedy violations of the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), Ohio R.C. § 4111, *et seq*.

**JURISDICTION AND VENUE**

3. This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et seq*.

4. The Court has personal jurisdiction over Defendant because its principal place of business and headquarters is in Ohio.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the FLSA claims as to form part of the same case or controversy.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant's headquarters and principal place of business is located in this District and Division, Defendant conducts business throughout this District and Division, and a substantial part of the events and omissions giving rise to the claims occurred in this District and Division.

**PARTIES**

7. At all material times, Plaintiff was and is a citizen of the United States and a resident of Richland County, Ohio.

8. At all material times, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e) and Ohio R.C. § 4111.03(D)(3).

9. At all material times, Plaintiff was an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

10. At all material times, Defendant was and is a limited liability company headquartered in Richland County, Ohio, with its principal place of business located at: 150 East Longview Avenue, Mansfield, Ohio 44903.

11. At all material times, Defendant was and is an employer within the meaning of 29 U.S.C. § 203(d) and Ohio R.C. § 4111.03(D)(2).

12. At all material times, Defendant was and is an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(r).

13. At all material times, Defendant is and was an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), and has enjoyed yearly gross revenue in excess of $500,000.

14. Plaintiff's written consent to this action is attached hereto as Exhibit 1.

15. Written consents to join this action, as and when executed by other individual plaintiffs, will be filed pursuant to 29 U.S.C. § 216(b).

## FACTUAL ALLEGATIONS

16. Defendant is a manufacturer of molded automotive parts, which operates manufacturing plants in Ohio.

17. From approximately 2019 through the present, Plaintiff was employed by Defendant as a manufacturing employee at a plant located in Mansfield, Ohio.

18. Specifically, Plaintiff worked as an equipment operator, and then as a quality inspector.

19. At all material times, Defendant employed similarly situated manufacturing employees at each of its manufacturing plants, including: quality inspectors, equipment operators, and material handlers (hereinafter "manufacturing employees").

20. Plaintiff and other similarly situated manufacturing employees had the same and/or substantially similar job duties and/or responsibilities and were subjected to the same policies and procedures.

21. Defendant classified Plaintiff and other similarly situated manufacturing employees as non-exempt employees.

22. Defendant paid Plaintiff and other similarly situated manufacturing employees an hourly wage.

23. Plaintiff and other similarly situated manufacturing employees regularly worked more than 40 hours per week.

**(Failure to Pay for All Hours Worked)**

24. Plaintiff and other similarly situated manufacturing employees were only paid for work performed between their scheduled start and stop times, regardless of when they clocked out, and were not paid for work performed before and after their scheduled start and stop times, including: (a) changing into and out of my personal protective equipment, including but limited to gloves, safety glasses, and/or sleeves; (b) getting tools and equipment; (c) getting work assignments and/or attending meetings to discuss manufacturing issues and work that needed to be completed; and (d) walking to and from their assigned area of the manufacturing floor.

25. The pre-shift work—*i.e.*, changing into my personal protective equipment, getting work assignments, tools, and equipment, attending a meeting, and walking to my assigned area of the manufacturing floor—took upwards of approximately 20 minutes or more. In order to start work on time, Plaintiff and other similarly situated manufacturing employees had to arrive at least 20 minutes early to start this pre-shift work.

26. The post-shift work—*i.e.*, walking from the manufacturing floor and changing out of personal protective equipment—took upwards of approximately 10 minutes or more.

27. In addition, Plaintiff and other similarly situated manufacturing employees frequently started performing their manufacturing work before their shift start times and continued

4

performing their manufacturing work after their shift end times to complete tasks that were not finished at the end of their shifts.

28. Defendant knew that Plaintiff and other similarly situated manufacturing employees performed this pre-shift and post-shift work because it required them to perform it and supervisors observed them performing it.

**(Failure to Pay for Donning Time)**

29. Before Plaintiff and other similarly situated manufacturing employees began their shifts, they donned personal protective equipment, including gloves, safety glasses, and selves.

30. Wearing personal protective equipment was necessary because Plaintiff and other similarly situated manufacturing employees could not safely perform their work without it. It protected Plaintiff and other similarly situated manufacturing employees from various injuries, including hand, eye, and other bodily injuries.

31. Additionally, Defendant required Plaintiff and other similarly situated manufacturing employees to wear the personal protective equipment, required them to put it on and take it off at work so that it was maintained in a safe, sanitary, and reliable condition, and did not want them to take it home.

32. The time Plaintiff and other similarly situated manufacturing employees spent donning their personal protective equipment was an integral and indispensable part of their principal activities, was required by Defendant and the Occupational Safety and Health Administration ("OSHA") and was performed for Defendant's benefit in that it helped keep the plant floors safe and helped promote a more safe and efficient manufacturing process.

5

33. Donning personal protective equipment is an intrinsic element of Plaintiff and other similarly situated manufacturing employees' job duties. Plaintiff and other similarly situated manufacturing employees cannot dispense with donning personal protective equipment.

34. Plaintiff and other similarly situated manufacturing employees were not paid for time spent donning their personal protective equipment.

**(Failure to Pay for Retrieving Tools Equipment, and Work Assignments)**

35. In addition to donning their personal protective equipment, Plaintiff and other similarly situated manufacturing employees were required to get work assignments and retrieve tools and equipment necessary to perform their manufacturing work.

36. Getting work assignments, tools, and equipment are intrinsic elements of the manufacturing process, and is necessary because Plaintiff and other similarly situated manufacturing employees could not perform their manufacturing work without them.

37. Plaintiff and other similarly situated manufacturing employees had to retrieve their tools and before their shift start times because they were not kept in their assigned work area.

38. Attending meetings and otherwise getting work assignments is an intrinsic element of the manufacturing process. It is necessary in order for Plaintiff and other manufacturing employees to be able to perform their assigned work and avoid problems on the manufacturing floor.

39. The time Plaintiff and other similarly situated manufacturing employees spent getting tools and equipment, and getting work assignments and/or attending meetings, was an integral and indispensable part of their principal activities, was required by Defendant, and was performed for Defendant's benefit. Plaintiff and other similarly situated manufacturing employees cannot dispense without performing these activities.

40. Plaintiff and other similarly situated manufacturing employees were not paid for the time spent performing these activities.

### (Failure to Pay for Post-Donning Walk Time)

41. After donning their personal protective equipment, retrieving tools and equipment, getting work assignments, and/or attending meetings, Plaintiff and other similarly situated manufacturing employees walked from the area where they changed into their personal protective equipment to their assigned area of the manufacturing floor. Such time constitutes "post-donning walk time."

42. Plaintiff and other similarly situated manufacturing employees were not paid for their post-donning walk time.

### (Failure to Pay for Performing Manufacturing Work)

43. Plaintiff and other similarly situated manufacturing employees frequently started performing their manufacturing work before their shift start times and were often required to work past the end of their shift times to complete manufacturing tasks that were not finished at the end of their scheduled shift stop time.

44. The time Plaintiff and other similarly situated employees spent performing their manufacturing work was an integral and indispensable part of their principal activities, was required by Defendant, and was performed for Defendant's benefit.

45. Plaintiff and other similarly situated manufacturing employees were not paid for the time spent performing their manufacturing work before their shift start time after their shift stop time.

**(Failure to Pay for Pre-Doffing Walk Time)**

46. After their shifts ended, Plaintiff and other similarly situated manufacturing employees walked from the manufacturing floor to the area in which they changed out of their personal protective equipment. Such time constitutes "pre-doffing walk time."

47. Plaintiff and other similarly situated manufacturing employees were not paid for their pre-doffing walk time.

**(Failure to Pay for Doffing Time)**

48. After their shifts ended, Plaintiff and other similarly situated manufacturing employees doffed their personal protective equipment.

49. The time Plaintiff and other similarly situated manufacturing employees spent doffing their personal protective equipment was an integral and indispensable part of their principal activities, was required by Defendant and OSHA, and was performed for Defendant's benefit in that it helped keep the manufacturing floor safe and helped promote a more safe and efficient manufacturing process.

50. Doffing personal protective equipment is an intrinsic element of Plaintiff and other similarly situated manufacturing employees' job duties. Plaintiff and other similarly situated manufacturing employees cannot dispense doffing their personal protective equipment if they are to perform their manufacturing work.

51. Plaintiff and other similarly situated manufacturing employees were not paid for time spent doffing their personal protective equipment.

**(Failure to Pay Overtime Compensation)**

52. As a result of Plaintiff and other similarly situated manufacturing employees not being paid for all hours worked, Plaintiff and other similarly situated manufacturing employees were not paid overtime compensation for all of the hours they worked over 40 each workweek.

53. The amount of time Plaintiff and other similarly situated employees spent on the unpaid work referenced above (including changing into and out of personal protective equipment, getting work assignments, tools, and equipment, and walking to and from their assigned area of the manufacturing floor) amounted to approximately 30 minutes or more each workday.

54. The time Plaintiff and other similarly situated employees spent performing the unpaid work referenced above was in addition to the 40 or more hours they regularly worked between their scheduled start and stop times each workweek, and thus, constituted overtime hours worked, for which they were/are entitled to overtime compensation at a rate of one and one-half times their regular hourly rate of pay.

**(Failure to Keep Accurate Records)**

55. Upon information and belief, Defendant failed to make, keep, and preserve accurate records of all of the unpaid work performed by Plaintiff and other similarly situated manufacturing employees employed by Defendant.

**(Defendant Willfully Violated the FLSA)**

56. Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA.

57. Defendant knew that, and otherwise showed reckless disregard as to whether its conduct was prohibited by the FLSA.

58. Defendant had/has a common practice and policy of requiring Plaintiff and other similarly situated employees to perform the unpaid worked referenced above (including changing into and out of my personal protective equipment, getting work assignments, tools, and equipment, attending meetings, and walking to and from their assigned area of the manufacturing floor) and not compensating them for time spent performing such work.

59. Defendant knew that Plaintiff and other similarly situated employees were performing the unpaid work because Defendant required them to perform it and supervisors observed them performing it.

60. Defendant, who determined the work schedules of Plaintiff and other similarly situated employees, also knew that the time Plaintiff and other similarly situated employees spent performing such unpaid work was in addition to the 40 hours or more that Defendant scheduled them to work, and thus, knew that Plaintiff and other similarly situated employees should have been paid overtime compensation for such unpaid work.

61. Defendant knew that, and otherwise showed reckless disregard as to whether its conduct in failing to properly pay Plaintiff and other similarly situated employees for the unpaid work referenced above violated the FLSA.

62. Defendant knew or should have known that its policies and practices violate the law, and Defendant did not make and has not made a good faith effort to comply with the FLSA. Rather, Defendant knowingly, willfully, and/or with reckless disregard of the law has carried out its unlawful pattern, practice, and policy of not paying its Plaintiff other similarly situated manufacturing employees for all hours worked. Defendant's method of paying Plaintiff and other similarly situated employees was not based on a good faith and reasonable belief that its conduct complied with the law.

## COLLECTIVE ACTION ALLEGATIONS

63. Plaintiff brings Count One of this action on his own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendant's unlawful conduct.

64. The class which Plaintiff seeks to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff is himself a member, is composed of and defined as follows:

> All current and former non-exempt manufacturing employees of Nanogate North America, LLC in the United States at any time between three (3) years prior to the filing of this suit and the date of final judgment in this matter ("FLSA Class").

65. Plaintiff is unable, at this time, to state the exact size of the potential class, but upon information and belief, avers that it consists of more than 400 persons.

66. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid wages, unpaid overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA. In addition to Plaintiff, numerous current and former manufacturing employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiff is representative of those other employees and is acting on behalf of their interests as well as his own in bringing this action.

67. The similarly situated manufacturing employees are known to Defendant and are readily identifiable through its payroll records. These individuals may readily be notified of this action, and allowed to opt in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid wages, unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

68. Although the exact amount of damages may vary among the similarly situated employees in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

## OHIO CLASS ACTION ALLEGATIONS

69. Plaintiff brings Count Two of this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of himself and all other members of the class ("the Ohio Class") defined as:

> All current and former non-exempt manufacturing employees of Nanogate North America, LLC in Ohio at any time between three (3) years prior to the filing of this suit and the date of final judgment in this matter.

70. The Ohio Class is so numerous that joinder of all class members is impracticable. Upon information and belief, the Ohio Class consists of more than 400 individuals.

71. There are questions of law or fact common to the Ohio Class, including but not limited to the following:

> (a) whether Defendant failed to pay overtime compensation to its manufacturing employees for hours worked in excess of 40 each workweek; and
>
> (b) what amount of monetary relief will compensate Plaintiff and other members of the class for Defendant's violation of Ohio R.C. 4111.03 and 4111.10.

72. The claims of Plaintiff are typical of the claims of other members of the Ohio Class. Plaintiff's claims arise out of the same uniform course of conduct by Defendant and are based on the same legal theories as the claims of the other Ohio Class members.

73. Named Plaintiff Chance Moyer will fairly and adequately protect the interests of the Ohio Class. His interests are not antagonistic to, but rather are in unison with, the interests of the other Ohio Class members. Plaintiffs' counsel has broad experience in handling class action

wage-and-hour litigation and is fully qualified to prosecute the claims of the Ohio Class in this case.

74. The questions of law or fact that are common to the Ohio Class predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the Ohio Class, listed above, are common to the class as a whole, and predominate over any questions affecting only individual class members.

75. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Ohio Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Ohio Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE

**(Violations of Fair Labor Standards Act)**

76. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

77. Defendant's practice and policy of not paying Plaintiff and other similarly situated manufacturing employees for all time worked and overtime compensation at a rate of one and one-half times their regular rate of pay for all the hours they worked over 40 each workweek violated the FLSA, 29 U.S.C. §§ 201-219 and 29 CFR § 785.24.

78. Defendant intentionally failed to pay Plaintiff and other similarly situated employees' required overtime compensation for hours worked in excess of 40 per workweek.

79. Defendant's conduct in failing to pay Plaintiff and other similarly situated employees for all time worked and overtime compensation at a rate of one and one-half times their regular rate of pay for all the hours they worked over 40 each workweek was willful and/or in reckless disregard of the rights of Plaintiff and those similarly situated.

80. Defendant's actions and/or omissions were not in good faith.

81. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated the provisions of the FLSA.

82. As a result of Defendant's practices and policies, Plaintiff and other similarly situated manufacturing employees have been damaged in that they have not received wages due to them pursuant to the FLSA.

## COUNT TWO

### (Violations of Ohio Minimum Fair Wage Standards Act)

83. Plaintiff, on behalf of himself and the Ohio Class, realleges and incorporates by reference the foregoing allegations as if fully rewritten herein.

84. Defendant's practices and policies of not paying Plaintiff and other similarly situated employees for all time worked, including overtime compensation at the rate of one and one-half times their regular rate of pay for all of the hours they worked over 40 each workweek, violates the OMFWSA, R.C. § 4111.03, *et seq*.

85. Defendant intentionally failed to pay Plaintiff and other similarly situated employees' required overtime compensation for hours worked in excess of 40 per workweek.

86. Defendant's conduct in failing to pay Plaintiff and other similarly situated employees for all time worked and overtime compensation at a rate of one and one-half times their

regular rate of pay for all the hours they worked over 40 each workweek was willful and/or in reckless disregard of the rights of Plaintiff and those similarly situated.

87. Defendant's actions and/or omissions were not in good faith.

88. By engaging in the above-described practices and policies, Defendant willfully, knowingly and/or recklessly violated the OMFWSA, R.C. § 4111.03, *et seq*.

89. As a result of Defendant's practices and policies, Plaintiff and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the OMFWSA.

## JURY DEMAND

90. Pursuant to their rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, and all those similarly situated, collectively pray that this Honorable Court:

A. Issue an order permitting this litigation to proceed as a collective action pursuant to the FLSA;

B. Order prompt notice to all class members that this litigation is pending and that they have the right to "opt in" to this litigation pursuant to 29 U.S.C. § 216(b);

C. Issue an order certifying the Ohio Class pursuant to Fed. R. Civ. R. 23(a) and (b)(3);

D. Award Plaintiff and the classes he represents actual damages for unpaid wages;

E. Award Plaintiff and the classes he represents statutory liquidated damages in an amount to the unpaid wages found due to Plaintiff and the classes under the FLSA and the OMFWSA;

F. Award Plaintiff and the classes he represents pre- and post-judgment interest at the statutory rate;

G. Award Plaintiff and the classes he represents attorneys' fees, costs, and disbursements; and

H. Award Plaintiff and the classes he represents further and additional relief as this Court deems just and proper.

Respectfully submitted,

/s/ *Matthew S. Grimsley*
Matthew S. Grimsley (Ohio 0092942)
Anthony J. Lazzaro (Ohio 0077962)
Lori M. Griffin (Ohio 0085241)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, OH 44022
Telephone: 216-696-5000
Facsimile: 216-696-7005
matthew@lazzarolawfirm.com
anthony@lazzarolawfirm.com
lori@lazzarolawfirm.com

Attorneys for Plaintiff